## BRADLEY v. THE STATE.

1. On the trial of one charged with violating the local option liquor statute, it is not error for the court, in charging on the issue of fact as to the intoxicating nature of the liquor sold, to instruct the jury, in substance, that the accused, though a licensed druggist, could not legally sell a compound or preparation of intoxicating liquor and other ingredients, if the intoxicating liquor retained its distinctive character and effect, and such compound or preparation was reasonably suited to be used as an intoxicating beverage.  The court may in its charge group the constituent elements of an offense, and instruct the jury that if these elements be proved beyond a reasonable doubt, they should convict the accused.
2. Where irrelevant testimony was not objected to, it is not improper for the court to instruct the jury that such irrelevant testimony should be disregarded in passing on the real merits of the case.
3. That a sentence is excessive is not reviewable in a motion for a new trial.
4. The evidence warranted the jury in finding that the accused was guilty of at least a technical, if not a deliberate, violation of the local option liquor law.

Submitted October 19, —Decided November 12, 1904.

Indictment for unlawful sale of liquor.    Before Judge Free-
man.    City court of Newnan.    September 2, 1904.

*W. C. Wright*, for plaintiff in error.

*W. G. Post, solicitor,* contra.

EVANS, J.    The defendant was a druggist in the City of New-
nan, and was arraigned before the city court of Newnan upon an
indictment charging him with the offense of selling, for a valuable
consideration, alcoholic, spirituous, malt, and intoxicating liquors
and intoxicating bitters.    On the trial of the case the following
facts were made to appear: The defendant conducted a drug-
store, and had, on divers occasions, filled for his customers pre-
scriptions containing whisky, sometimes refilling a prescription at
the instance of the person to whom it was given by a physician.
Defendant did not sell any straight whisky, nor any mixture con-
taining whisky, without a physician's prescription.    The prescrip-
tions called for whisky in a sufficient quantity to produce intoxi-
cation, if taken in large doses, and the effect of the ingredients
introduced was not to destroy the intoxicating quality of the
whisky, but to merely give it a different and unpleasant taste.
On one occasion the defendant was asked by a customer to sell
him some whisky, but the defendant declined to do so without a
doctor's prescription; so the customer went off and got a prescrip-
tion, calling for ingredients to be compounded with whisky, and
the defendant filled it.    This customer, when presenting a pre-
scription designed by his physician to alleviate his suffering from
a cold, would "sometimes tell defendant [he] wanted rye whisky
put in the prescription, and at other times corn whisky."    The
customer tried to get defendant to leave out the drugs called for
by the prescription, but defendant declined to do so, saying he
had no right to fill the prescription except as it was written.
Another customer was afflicted with asthma and needed a stimu-
lant to relax his lungs.    His physician gave him a prescription
which called for whisky and glycerine, the effect of the glycerine
being merely to sweeten the whisky and not to destroy its stimu-
lating properties.    One prescription filled by the defendant was
written by another physician, who prescribed for a negro seriously
ill with pneumonia; and while the prescription specified ingre-
dients besides whisky, what the physician sought was a stimulant,

and the other ingredients called for by his prescription "were not put in for the purpose of destroying the whisky of its stimulating effect." The statement made by the defendant was, in substance, as follows: He was a regularly licensed apothecary, and conducted a drug-store under the firm name of Bradley & Wester. Had never sold any whisky, but in the conduct of his business as a druggist he had filled some prescriptions containing whisky with other drugs, making a compound. "When these prescriptions would be presented to [him] to be filled, [he] asked the parties no questions about what was the matter with them," nor would he ask any such questions when prescriptions not containing whisky were presented. He thought the persons presenting prescriptions calling for whisky as one of the ingredients really wanted them for use as a medicine, and had no reason to suspect that these compounds made in filling such prescriptions were to be used by the parties as a beverage or in any way except as a medicine. He assumed that the physician giving a prescription knew what his patient needed, and acted accordingly, filling the prescription, as he thought he had a right to do, in the conduct of his business as a druggist.

The jury returned a verdict of guilty, and the defendant made a motion for a new trial, which was overruled by the court. In his motion he urged the following grounds as cause for granting him a new trial, in addition to his general complaint that his conviction was contrary to law and the evidence: (1) "Because the court erred in charging the jury as follows: 'If you find from the evidence that a person asked the defendant to sell him a pint or a quart or any other quantity of corn or rye whisky, or some other intoxicating liquor, and the defendant told that person that he would not sell same to him unless he brought a prescription of a physician for it; and if you further find that said person soon thereafter came back to the defendant with a physician's prescription for said corn or rye whisky, or other intoxicating liquors, with other ingredients to be put in it; and if you further find that defendant took prescription and filled it by taking corn or rye whisky, or other intoxicating liquors, and putting said other ingredients called for by said prescription in the same, and then sold and delivered to said person, for valuable consideration, the said corn or rye whisky, or other

intoxicating liquor, with said other ingredients in the same; and if you further find from the evidence that the ingredients put into the corn or rye whisky, or other intoxicating liquors, did not destroy the same as an intoxicating drink, then I charge you that defendant is guilty of violating the local option law in this county, and you should find him guilty. But if said other ingredients did destroy the effects of said intoxicating liquors as an intoxicant, then he would not be guilty.'" The vice of this charge was (movant insists) that it amounted to a direction to the jury to find the defendant guilty; strongly expressed to the jury the opinion of the court as to the facts in the case, was too emphatic, and tended to impress upon the jury that the court thought the defendant guilty; because the jury were told to find the defendant guilty if they believed a certain statement of facts detailed by the court, which statement did not embrace all the facts necessary to establish the charge against him; because this charge singled out the evidence of one witness for the State and laid particular stress on the evidence of this witness, being equivalent to an instruction that if the jury believed this witness they should find the defendant guilty; because the charge was in the nature of an argument in favor of the theory of the State, and entirely eliminated from the consideration of the jury the defendant's defense; and, further, the charge was erroneous because based on the assumption that the defendant would be guilty if the ingredients mixed with the whisky did not absolutely destroy its effects as an intoxicant, notwithstanding the defendant may in good faith have believed that the compound called for by a prescription was to be used by the customer as a medicine. (2) Because the court erred in charging the jury, in effect, that it was for them to determine whether or not the mixing of other ingredients with intoxicating liquors and selling the compound upon a physician's prescription was a mere subterfuge on the part of the defendant and his customers, and if the jury should find that "the prime purpose of the one was to buy corn or rye whisky, or other intoxicating liquors, and of the defendant to sell intoxicating liquors, and defendant knew of this prime purpose of said other person," the jury should return a verdict of guilty. This charge was erroneous, movant says, as being inappropriate to the case and open to

all the vices of the charge first above set forth. (4) Because the court nowhere charged the jury as to the defense upon which he relied, viz.: that he was a druggist and in no instance sold whisky as a beverage, but only filled prescriptions for parties obtaining them from physicians, without any reason to suspect that the compounds called for would be used for other than a medicinal use. (5) Because the fine of five hundred dollars and costs was exorbitant and excessive. (6) Because the court erred in charging the jury that "What other druggists of this city or elsewhere did would not make the act of the defendant lawful or unlawful;" this charge being inappropriate to the case, etc., etc.

1. The pressure of the defendant's case was as to whether he had sold an intoxicating beverage or a medicine. The State contended that the compounds of whisky and other ingredients sold by the defendant were not intended for medicinal use, and that the sale of them as a substitute for straight whisky was a mere subterfuge designed to evade the local option law. The defendant, on the other hand, insisted that he in good faith, as a druggist, made and sold these compounds only upon a physician's prescription, believing they were to be used as medicine and not drunk as a beverage. Whether or not the mixture of whisky and the other ingredients was of an intoxicating nature was a question for the jury to determine. In his statement the defendant did not deny that he had, upon the prescriptions of physicians, sold medicinal compounds of which whisky was one of the principal ingredients, and that the whisky retained its intoxicating effects. "Some beverages, such as whisky, brandy, etc., are in such common and notorious use as intoxicants that no proof is requisite to stamp them with this character." *Bell* v. *State*, 91 *Ga.* 231. The intoxicating quality of such beverages is judicially noticed. *Snider* v. *State*, 81 *Ga.* 753. But where a compound or preparation of such liquors and other ingredients is sold, it is a question of fact for the jury to determine, upon proof, its intoxicating nature *Bell* v. *State*, supra; *Faircloth* v. *State*, 73 *Ga.* 426. The Supreme Court of Kansas, construing a statute very similar to ours, as applied to a mixture of intoxicating liquors with certain medicinal ingredients, held that "if the compound or preparation be such that the distinctive character and effect of intoxicating liquor are gone, that its use as an intoxicating beverage is practi-

cally impossible by reason of the other ingredients, it is not within the statute." " If the intoxicating liquor remain as a distinctive force in the compound, and such compound is reasonably liable to be used as an intoxicating beverage, it is within the statute, and this though it contain many other ingredients, and ingredients of an independent and beneficial force in counteracting disease or strengthening the system." Intox.-Liquor Cases, 25 Kans. 751. Our local option statute was designed to prohibit the sale of all intoxicating beverages in those counties which adopted its provisions in the manner prescribed by the statute. It was not intended that the people were to be deprived of the remedial benefits of alcohol as a constituent element of medicinal concoction ; neither was it intended that by a combination of medicinal ingredients alcohol or intoxicating liquor could be sold as a beverage. The test applied in the Kansas case from which we have quoted has been approved by the courts in many of our sister States. Black, Intox. Liq. § 8, and cases cited in the notes. The justice of the test seems apparent, and is supported by reason and authority. The inhibition of the sale of alcoholic, spirituous, malt, or intoxicating liquors, provided in Pol. Code, § 1548, is sweeping, and the only exception is that contained in the following section (1549), which permits licensed druggists to sell pure alcohol for medicinal, art, scientific, and mechanical purposes. This exception, however, does not authorize a licensed druggist to sell whisky, even under a physician's prescription. *Vardeman* v. *State,* 108 *Ga.* 774. It is the duty of the court to instruct the jury upon the principles of law applicable to a sale. This duty is frequently attempted to be discharged by general instructions on the abstract law. Some minds may fail to grasp the principle when stated in the abstract, or, if grasped, may not be able to properly apply it to the facts. A clear statement of the law in the concrete is always of great aid to a jury, and instructions presenting the application of the law to the facts are to be commended, unless the language can be construed into the expression of an opinion on the facts. " The judge can not pilot the jury in their passage by inference from fact to fact, but he can point out the line of transit which the law authorizes them to follow if they think the facts in evidence sustain them in taking that route." *Kinnebrew* v. *State,* 80 *Ga.* 238. The court may in its charge group the constituent elements of an

offense, and instruct the jury that if these elements be proved beyond a reasonable doubt, they would be authorized to convict. *Pennaman* v. *State*, 58 *Ga.* 336. While the court may charge the jury that if the various constituent and elemental facts are proved, they would be authorized to convict, the court may not instruct the jury that proof of certain facts evidentiary of the constituent elements of the crime, but not sufficiently comprehensive to include all of its elements, will warrant a conviction. See *Kinnebrew* v. *State*, supra.

The offense charged against the defendant in the present case was the sale of intoxicating liquors and intoxicating bitters. The instructions to the jury complained of nowhere intimated an opinion as to the evidentiary value of the testimony of any witness, but merely had the effect of informing the jury that, as matter of law, if the defendant sold intoxicating liquors in combination with other ingredients which did not destroy the intoxicating effects of such liquors or prevent their use as an intoxicating beverage, and the purpose of the defendant was to sell and the purpose of the purchaser was to buy whisky for use as a beverage, and the whisky was sold for a valuable consideration, the defendant would be guilty, notwithstanding he in no instance sold except under a physician's prescription. The constituent elements of the offense were defined to the jury, and they were simply told that if those elements were sufficiently established by proof, then they should find the defendant guilty. The instructions complained of and the assignments of error thereon appear in the preliminary statement of facts. We are of the opinion that these instructions were not, for any of the reasons assigned, objectionable.

2. One of the witnesses for the State testified, without objection, that he had also had prescriptions calling for whisky filled at other drug-stores in Newnan. In view of this testimony, which the jury might otherwise regard as of some moment, the court very properly instructed them that what other druggists in that city or elsewhere had done would not make what the defendant had done either lawful or unlawful. It was not, as insisted by counsel for the plaintiff in error, incumbent on the judge, of his own motion, to rule out this testimony as irrelevant, rather than to caution the jury to disregard the same in passing upon the real merits of the case.

3. The complaint that the fine imposed on the defendant was excessive is not well taken.     An improper sentence is not a proper subject-matter of a motion for a new trial.

4. It follows from the discussion of the law entered into in the first division of this opinion, that the theory of the defense was unsound, and that, under the evidence submitted, the conviction of the defendant was right and proper.     That he may not have deliberately intended to violate the statute can not save him from the consequences of his doing that which the law forbids even a conscientious druggist to do in conducting his business in a county which has adopted the local option liquor law.     His conviction must therefore stand.

*Judgment affirmed.     All the Justices concur.*